UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONFIE SEGUROS HOLDING II CO., <br><br> Plaintiff, <br><br> v. <br><br> J.C. FLOWERS & CO. LLC; J.C. FLOWERS I LP; and JAMES CHRISTOPHER FLOWERS, <br><br> Defendants. | No. 17 C 5166 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Confie Seguros Holding II Co. alleges that Defendants made several misrepresentations in the course of selling certain securities to Confie in violation of sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j, 78t(a). Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). R. 20.[1] For the following reasons, that motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] A former defendant, Eric Rahe, also filed a motion to dismiss. R. 24. Confie settled with Rahe and voluntarily dismissed its claims against him. R. 46. Thus, Rahe's motion is denied as moot.

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

To state a claim for securities fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake" in compliance with Federal Rule of Civil Procedure 9(b). *See Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). "The reference to 'circumstances' in the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff [.]" *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("particularity . . . means the who, what, when, where, and how"). Nevertheless, courts should not "take an overly rigid view of the

formulation," and the "requisite information . . . may vary on the facts of a given case." *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). Thus, although plaintiffs " 'are not absolutely required to plead the specific date, place, or time of the fraudulent acts,' " they "still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " *Id.* (quoting 2 James Wm. Moore, MOORE'S FED. PRAC. § 9.03[1] [b], at 9-18 (3d ed. 2010)). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a] complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted).

**Background**

Confie is one of the world's largest insurance brokers. In 2015, it entered a stock purchase agreement with Affirmative Insurance Holdings, Inc. ("AIH") to acquire a network of managing general agencies (the "MGAs").[2] A managing general agency is a type of insurance agency that is vested with underwriting authority from an insurer. *See* R. 21 at 1 n.2. In this case, the MGAs Confie purchased relied on an insurance company owned by AIH—called Affirmative Insurance Company ("AIC")—to underwrite the policies it sold. Since the value of the MGAs was largely dependent

---

[2] To facilitate the deal, AIH moved the MGA assets into a holding company, and then sold the stock of the holding company to Confie. Hence, this dispute involves a sale of securities that allegedly implicates the Exchange Act.

3

on the viability of AIC, Confie required AIH to certify AIC's viability as part of the deal to purchase the MGAs.

One way to measure the viability of an insurance company is using a "Risk Based Capital Ratio," or RBC Ratio. This measurement compares an insurance company's capital to its risk. How risk is measured can vary, but Confie alleges that a RBC Ratio below 200% would trigger regulatory intervention and risk state-imposed liquidation. *See* R. 1 ¶ 4. For this reason, Confie required AIH to certify that as of the date of the the MGA deal, and once Confie paid AIC $20 million as part of the deal, AIC's RBC Ratio "will be equal to or greater than 200% on a pro forma basis." That certification was in fact made on June 30, 2015, the date of closing. *See* R. 1-2.

Confie alleges that AIH knew the certification was false when it was made. Specifically, Confie alleges that AIH's CEO stated that it "could easily be argued" that AIC's RBC Ratio "would not approach 200% even with a $20 million infusion." R. 1 ¶ 66. In May 2015, AIH decisionmakers received a report that AIC's RBC Ratio was only 115%. *Id.* ¶ 67. As of May 30, 2015, AIH decisionmakers still did not think that the $20 million infusion would be sufficient. *Id.* ¶ 71. Ten days before closing, AIH decisionmakers contemplated that Confie might sue AIH after closing the MGA deal, but that Confie's only recourse might be as a creditor in an AIC bankruptcy proceeding. *Id.* ¶ 89. In late June 2015, shortly before the closing, AIH decisionmakers received a report that AIC's RBC Ratio was 185% and that $20 million would not increase it to 200%. *Id.* ¶ 91. Then one day before the closing, the Illinois Department of Insurance ("IDOI") ordered AIC to increase its RBC Ratio to

4

200%. *Id.* ¶ 93. And shortly after the closing the IDOI ordered a reserve analysis of AIC, *id.* ¶ 100, which ultimately led to AIC's liquidation several months later.

In addition to the RBC Ratio certification, Confie claims that AIH made several other false representations in the stock purchase agreement. Most of these were representations that MGA entities were not subject to ongoing litigation or regulatory orders. R. 1 ¶¶ 83-88. Confie alleges that these representations were false because AIC was subject to an order of the Wisconsin Department of Insurance not to write new business in Wisconsin, *id.* ¶ 73, and the IDOI ordered AIC to improve its RBC Ratio to at least 200% the day before closing, *id.* ¶ 93.

AIH went bankrupt three months after the MGA deal. Thus, Confie has sued Defendants, who Confie alleges controlled AIH. Section 20(a) of the Exchange Act provides for liability for persons who "directly or indirectly control" a person who is directly liable for a securities violation. 15 U.S.C. § 78t(a). To support its claim of control liability, Confie alleges that Defendants owned a controlling share of AIH's stock (at oral argument it was undisputed that the amount was "slightly below" 50%, R. 62 at 75:20-22), and held a significant portion of its debt. R. 1 ¶¶ 3, 11. Confie also alleges that one of AIH's directors was an employee of Defendants, and Defendants had the power to elect several other AIH directors. *Id.* ¶¶ 130-31. Confie alleges further that due to their debt holdings, Defendants' consent was necessary for the MGA deal to go through. *Id.* ¶ 133. Individual defendant James Flowers is alleged to have threatened to scuttle the MGA deal unless his demands were met regarding the return he would realize from the deal. *Id.* ¶ 90.

5

## Analysis

Pleading a violation of § 10(b) of the Exchange Act requires plausible allegation of "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pension Trust Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018). "Pursuant to the [Private Securities Litigation Reform Act], securities fraud complaints must also be able to: (1) specify each misleading statement; (2) set forth the facts on which a belief that a statement is misleading is formed; (3) state with particularity facts giving rise to a strong inference that the defendant acted with scienter; and (4) prove loss causation." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 617 (7th Cir. 2011) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005); *Higginbotham v. Baxter Intern., Inc.,* 495 F.3d 753, 756 (7th Cir. 2007)). Confie claims that it was injured by material misrepresentations AIH made in the stock purchase agreement, and that Defendants are liable pursuant to § 20(a) because they controlled AIH. Defendants argue that Confie has failed to adequately plead (1) a material misrepresentation, (2) scienter, (3) reliance, (4) loss causation, and (5) control.

### 1. Misrepresentation

Although Confie alleges that several misrepresentations contained in the purchase agreement were false, the primary misrepresentation in this case is the certification regarding AIC's RBC Ratio. Since the certification was part of a contract

6

signed by the parties, the alleged circumstances of the misrepresentation satisfy the particularity requirements of Rule 9(b) (i.e., the who, what, where, when). But the PSLRA imposes an additional requirement on plaintiffs to plead *why* a statement is false. *See United States ex rel. Presser v. Acacia Health Clinic, LLC*, 836 F.3d 770, 779, 782-83 (7th Cir. 2016); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016). Defendants argue that Confie has failed to meet this standard because it has failed to allege that the certification was false when made. *See Higginbotham*, 495 F.3d at 760 ("there is no 'fraud by hindsight'" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007)).

Defendants contend that Confie has merely alleged that AIC's viability was uncertain during negotiations, and that this fact was known to Confie at the time. Defendants focus on Confie's allegation that AIH decisionmakers stated that "it could be argued" that the $20 million infusion to AIC would be insufficient to bring its RBC Ratio up to 200% by the time the deal closed. R. 1 ¶¶ 66, 71. Defendants argue that this statement made a month before closing is a matter of opinion that does not permit the inference that AIH decisionmakers knew that certification of a 200% RBC Ratio a month later was false, and thus cannot form the basis of a fraud claim.

It appears that calculating an RBC Ratio involves a certain amount of expert judgment or opinion. The formula for determining a RBC Ratio was not a subject of detailed discussion in the briefs or at oral argument. But Confie does not allege that AIH was merely mistaken in calculating the RBC Ratio. Rather, Confie claims that AIH decisionmakers did not believe that AIC's RBC Ratio was at least 200% on the

7

day of closing. This claim is not simply supported by the allegation regarding the statements of AIH decisionmakers on May 30 that it "could be argued" that the RBC Ratio would not be 200% at closing. Confie also alleges that in late June, shortly before the closing on June 30, AIH decisionmakers were given a projection that AIC's RBC Ratio on the closing date would be only 185% even with the $20 million infusion. This projection caused AIH decisionmakers to fear the potential of a future lawsuit by Confie regarding the MGA deal—a particularly telling position. Then, the day before the closing on June 29, 2015, the Illinois Department of Insurance issued a Corrective Order to AIC ordering it to improve its RBC Ratio to at least 200%, again indicating that AIC's RBC Ratio was less than 200%. Shortly after the closing, the IDOI ordered a new analysis of AIC's RBC Ratio, indicating that the $20 million infusion had not lifted it to the 200% level that would have avoided continued scrutiny by the IDOI. Taken together as a whole, and assuming they are true, these allegations strongly support the inference that AIH decisionmakers knew that the certification regarding AIC's RBC Ratio was false when made.

### 2. Scienter

The PLSRA also requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). That state of mind is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Kohl's*, 895 F.3d at 936. A complaint "gives rise to a strong inference of scienter 'only if a reasonable person would deem the inference of scienter

8

cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 324). Courts "must consider the relative probability of whether, taken as a whole, the false statements alleged . . . were 'the result of merely careless mistakes at the management level based on false information fed it from below' or reflect 'an intent to deceive or a reckless indifference to whether the statements were misleading.'" *Kohl's*, 895 F.3d at 936-37 (quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008)). "If the latter inference is not at least as compelling as the former, dismissal is appropriate." *Kohl's*, 895 F.3d at 937.

Here, Defendants contend that all the contracting parties were sophisticated, had dealt with each other in the past, and knew that AIC was seriously distressed. Defendants argue that these facts make the inference that AIH decisionmakers were simply mistaken in their opinion that AIC's RBC Ratio would be at least 200% at closing, more compelling than the inference that AIH decisionmakers had an intent to deceive. The Court disagrees for the reasons discussed above. Confie has made several allegations indicating that AIH decisionmakers either knew that the certification was false, or recklessly disregarded evidence seriously undermining the certification. These allegations are made with particularly as to the dates and speakers. Thus, they are sufficient to allege scienter.

### 3. Reliance

Defendants' arguments that Confie has not adequately pled reliance boil down to the contentions that (1) Confie already knew the risks of the deal, and (2) Confie

9

should have known better than to enter a deal that required it to rely on a representation as uncertain as the representation regarding AIC's RBC Ratio. But neither of these arguments undermines Confie's allegation that it did in fact rely on the certification. One might be able to conceive of a business decision that was so irrational as to eliminate the plausibility of reliance. Defendants, however, have made no argument that Confie's decisions were anywhere close to that end of the spectrum. Defendants have pointed to no facts that would allow the Court to infer that Confie did not actually rely on the certification as alleged.

## 4. Loss Causation

Defendants argue that even if Confie has sufficiently alleged reliance on the certification, Confie has not alleged that it was injured by the falsity of the certification. Defendants' contend that the only losses Confie identifies are associated with AIC's eventual liquidation, and this potential was disclosed to Confie.

This argument misses the point. It appears to be undisputed that Confie knew AIC was in a precarious position. If Confie was confident in AIC's viability, it would not have demanded the RBC Ratio certification. But Confie also claims that the fact that AIC's RBC Ratio was below 200%, despite the $20 million infusion, eventually caused it to be liquidated, thereby harming the MGA business. Confie's claim is not merely that a RBC Ratio less than 200% would make it more likely that AIC would fail, but that 200% in particular was the threshold at which the IDOI would pursue AIC's liquidation. The certification of the RBC Ratio was not merely intended to protect Confie from what by all accounts the parties knew was a risky deal. Indeed,

Confie concedes in its complaint that the deal remained risky even with an RBC Ratio of 200%, noting that it "is not a target number for a healthy insurer." R. 1 ¶ 42. But Confie emphasizes that such a ratio "is a bare minimum to avoid regulatory intervention." *Id.* The RBC Ratio certification was intended to assure Confie that regulatory action was not already a foregone conclusion, which would have been the case with an RBC Ratio below 200%. The regulatory take-over of AIC undisputedly caused Confie to search for other insurers to underwrite its policies, and Confie alleges that the deals it was forced to enter with alternative insurers caused it losses. Defendants do not make any argument that would undermine this theory of economic loss.

### 5. Control

To state a claim under section 20(a) of the Exchange Act, a plaintiff must allege: (1) a primary securities violation; (2) the individual defendant "actually exercised general control over the operations of the wrongdoer," *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 911 (7th Cir. 1994); and (3) the individual defendant "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992). "Control is a question of fact that will not ordinarily be resolved summarily at the pleading stage." *Miss. Pub. Employees' Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 93 (1st Cir. 2008); *see also Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *14 (N.D. Ill. Oct. 30, 2012); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1022 (N.D. Ill.

2004) (citing *In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003)).

Defendants argue that Confie's allegation that Defendants owned a controlling (nearly 50% share) of AIH's stock is insufficient to demonstrate control, citing a case that dismissed a control person claim against a defendant who owned 47% of the relevant company. R. 47 at 14 (citing *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *12 (N.D. Ill. Apr. 19, 2012)). But *Broadwind* focused on the second element of control liability, holding that the plaintiff had failed to allege that the defendant was "in a position to control the specific conduct that constitutes the alleged primary securities violation." 2012 WL 1357699, at *12. Contrary to Defendants' argument, *Broadwind* does not stand for the broad proposition that a 47% stock owner cannot have control person liability. Indeed, the Seventh Circuit has noted that a "bloc of 20% or less may be enough for working control when no one else holds a substantial position." *Fulton Cnty. Employees Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012).

Defendants also cite a case from the Southern District of New York dismissing a control person claim against two minority shareholders who each appointed one director. *See In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005). Defendants argue that Confie's allegation of control fails because Defendants controlled only one board member. But although Confie alleges direct control of only one board member who Defendants employed, Confie also alleges that Defendants chose, and thereby indirectly controlled, "a number of" AIH board

12

members. R. 1 ¶ 130. And, although the parties do not address this fact, according to a proxy statement filed with the SEC on April 23, 2015, AIH had only eight directors total, *see* R. 27-6 at 3-4; R. 27 at 2 (¶ 8), making it quite plausible that Defendants effectively controlled a majority of the board. Thus, *Global Crossing's* reasoning is not persuasive here.

Confie also alleges that Defendants held "a significant amount AIH's debts" such that Defendants controlled AIH. R. 1 ¶ 11. Defendants do not address this allegation.

Taken together, Confie's allegations plausibly show that Defendants controlled AIH. Courts in this district have found similar facts sufficient to allege general control for purposes of control person liability under § 20(a). *See, e.g.*, *Ross*, 2012 WL 5363431, at *13-14.

In addition to alleging actual general control, a plaintiff claiming control liability must allege that the defendant had the ability to control the specific transaction at issue. Confie alleges that Defendants would have to agree to waive compliance with covenants in their loan agreements with AIH in order for the MGA deal to close. R. 1 ¶ 57. Confie also alleges that express statements were made at AIH board meetings that the MGA deal could not proceed without Defendants' consent. *Id.* ¶ 78. Confie specifically alleges that on June 23 (one week before the closing), defendant James Flowers threatened to block the MGA deal unless he "realized more value in the transaction." *Id.* ¶ 90. Defendants argue, without citation, that the right of a subordinated debt holder to withhold consent from a transaction is insufficient

13

to plausibly allege control because it does not demonstrate control of the specific terms of the deal. *See* R. 47 at 14. This is dubious, since the specific terms of a deal that cannot be consummated due to withholding of consent are rather irrelevant. But in any case, Confie also alleges that defendant Flowers exercised his power to ensure that he maximized his return from the MGA deal. Defendants do not address this allegation. Confie has adequately alleged control person liability.[3]

## Conclusion

For the foregoing reasons, Defendants motion to dismiss, R. 20, is denied. Additionally, former defendant Rahe's motion to dismiss, R. 24, is denied as moot.

A status hearing is set for October 1, 2018, at which a discovery schedule will be entered. The parties should confer and be prepared to present an agreed schedule to the Court at the status hearing.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: September 24, 2018

---

[3] Since the Court holds that Confie has stated a claim against Defendants based on the RBC Ratio certification, it is unnecessary to address the other alleged misrepresentations, as they are relevant to the transaction as a whole and thus proper areas of discovery, whether or not they are separately sufficient bases to state a claim.

14