# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONFIE SEGUROS HOLDING II CO., a Delaware corporation, ) ) ) | |
| Plaintiff, ) ) | Case No. 17-cv-05166 |
| v. ) ) | Honorable Thomas M. Durkin |
| J.C. FLOWERS & CO. LLC, a Delaware limited liability company; J.C. FLOWERS I LP, a Delaware limited partnership; JAMES CHRISTOPHER FLOWERS, an individual, ) ) ) ) ) ) ) | |
| Defendants. ) | |

## AGREED ESI PROTOCOL ORDER

The parties to this Agreed ESI Protocol Order have agreed to the terms of this Order; accordingly, it is ORDERED:

This protocol describes the specifications for document production. It is not intended to supersede or conflict with the Federal Rules of Civil Procedure, the local rules of the Northern District, or any other rule or order of the Court. Issues, if any, arising on subject matter within the scope of this Order, but not directly addressed in it, shall be governed by those rules except as otherwise stipulated by the parties under Rule 29 or as addressed by motion as described in Section 8 below.

**1. DEFINITIONS**

Definitions will be construed according to the Federal Rules of Civil Procedure and The Sedona Conference® Glossary: E-Discovery & Digital Information Management (Fourth Edition), which is available at https://thesedonaconference.org/node/238 (last accessed January 30, 2019).

**2. CUSTODIANS**

The parties will meet and confer to identify their respective custodians and the production priority for them.

**3. DOCUMENT PROCESSING**

3.1 <u>Hidden Data</u>. The parties will, during processing, force on the following:

i. auto date (code information should be provided in place of date);

ii. track changes (absent special circumstances, the TIFF images should show all track changes in markup form);

iii. hidden columns or rows (noting that hidden columns and/or rows exist in native excel files will be sufficient);

iv. hidden text or worksheets;

v. hidden slides in native PowerPoint presentations; and

vi. comments (these should be visible on the TIFF images of the documents).

**4. DATA CULLING**

4.1 <u>Duplicates</u>. The parties will use industry standard hash values to de-duplicate documents. The parties will apply de-duplication on a family basis. The parties will de-duplicate within each custodian ("custodian de-duplication") and across custodians ("global de-duplication"). With respect to global de-duplication, the Load File will contain a metadata field ("All Custodians") identifying all custodians who possessed exact copies of the document. The parties will not de-duplicate loose electronic documents against email attachments. The parties will not count a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

4.2     Date Range.  The parties will meet and confer regarding the start date and end date to be applied to limit documents.  The parties' discussion of date range will include the issue of whether, if any of the fields Date Sent, Date Received, Date Created, Date Last Modified, and/or Date Last Printed fall within the or a specific date range, a document will be included.

4.3     Search Terms.  The parties will meet and confer regarding the search terms to be applied to limit documents.  If any family member hits on a search term, the entire family will be included for review purposes.  To the extent one or more documents in any family is responsive to any document request, the entire family will be produced, with the exception that privileged material may be redacted or withheld.  The parties further agree that applying the agreed-upon search terms to a given party's collection of electronically stored information ("ESI") does not by itself satisfy that party's obligations in responding to specific discovery requests; there may be categories of documents requiring collection other than by application of search terms. The parties shall run optical character recognition ("OCR") conversion on non-searchable PDF files and other stand-alone files and email attachments that do not have searchable text in order to make them searchable before running the searches.

4.4     The parties agree that search terms, custodians, and/or date ranges may need to be adjusted or supplemented as discovery proceeds.  The parties will meet and confer in a timely fashion regarding such additional search terms, custodians, and/or date ranges.

## 5.     PRODUCTION

5.1     Media.  Any production may be produced via FTP site or other secure file transfer site.  Otherwise, the parties will deliver each production on a CD, DVD, or USB flash drive using overnight delivery, or if a delivery is too large to fit on two CDs, DVDs, or USB flash drives, the

production will be delivered via an external hard drive using overnight delivery. The production media should be labeled with:

    i.    the producing party's name;

    ii.    the case name and number;

    iii.    the production volume; and

    iv.    the Bates number range.

5.2    <u>Production Format</u>. Any files not produced in native form shall be produced as tagged image file format ("TIFF") images accompanied with an image load file, a data load file, and document-level searchable text.

    i.    Image Requirements. A TIFF image converted from native file shall be produced as follows:

        1.    All images shall be group 4 black and white 300 dpi TIFF files named according to Bates number (although a Party may request a document be produced in color if required to understand its content);

        2.    Requested color images will be produced in JPG format;

        3.    Hidden content, tracked changes or edits, comments, and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image;

        4.    Bates numbers and confidentiality designations shall be branded to the images so that the numbers and designations print;

    5. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production;

    6. Images shall be single page TIFFs (one TIFF file for each page); and

    7. Each TIFF image should be assigned a Bates number that is unique and maintains a constant length across the entire document production (i.e., padded to the same number of characters).

  ii. Data Load File Requirements. The parties will produce a Relativity-compatible .dat load file with standard Concordance delimiters with each production volume. The data load file will contain all fields listed on Appendix A with a header row describing each field. The parties will also produce a Opticon-compatible .opt file to provide paths to individual Bates-numbered TIFF and JPG files.

    1. The parties are not obligated to produce metadata from a document if metadata does not exist or if the metadata is not machine extractable, except that the parties will produce custodian metadata for hard-copy documents to the extent that a custodian is reasonably known or can be assigned.

  iii. Extracted and OCR Text Requirements. The parties will provide electronically extracted text for ESI. The parties will provide OCR text for documents that do not contain electronically extractable text, for redacted documents, and for hard-copy documents.

5

        1.      The parties will provide document text as separate, document-level text files not embedded in the metadata load file; and

        2.      The parties will name each text file with the unique Bates number of the first page of the corresponding document, followed by the extension "txt."

5.3    <u>Native Production</u>.  The parties will produce presentations (i.e., PowerPoint) and Excel and/or CSV spreadsheets in native form to the extent such files are possessed by the producing party in native form.  The parties will replace the TIFF image with a document placeholder containing a unique Bates number and language sufficient to convey that the document was produced in native form, along with any applicable protective order designation.  The text file will contain the extracted text of the native file.  Should any TIFF image not be legible, the parties will work together to provide native versions of such documents on a case-by-case basis.

        i.      The parties will name each native file with the unique Bates number of the first page of the corresponding document, followed by the appropriate extension ("xls," "csv," or "ppt", etc.);

        ii.      The parties will provide a path to each native file in the data load file;

        iii.      When redaction is necessary, a redacted full TIFF version may be produced instead; and

        iv.      When documents of file types such as audio files, DWG files, AutoCAD files, Access databases, Microsoft Project files, Log files, and the like cannot be converted to image files or cannot be converted without undue burden and/or expense, such documents may be produced in native format with placeholders.

5.4     Other Files.  The parties will meet and confer to discuss a suitable production format for any document types not addressed herein.

5.5     Bates Numbering. Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI. For documents produced in native format, the Bates number and confidentiality designation should be electronically branded on the document placeholder.

**6.     CONFIDENTIALITY**

Confidentiality of documents produced will be designated in accordance with the Agreed Protective Order entered in the case.

**7.     PRIVILEGE**

7.1     Privilege Log.  The parties will provide a privilege log for any document withheld in whole or in part (i.e., redacted) based upon a claim of privilege at a time to be agreed upon by the parties.  The parties further agree to meet and confer regarding the production of a privilege log prior to any deposition(s) as necessary.  The log will detail the following for each document:

      i.     A fixed index/reference number for documents withheld in whole;

      ii.    a Bates number for documents withheld in part (i.e., redacted);

      iii.   document type;

      iv.    the document date, to the extent reasonably discernible:

            1.    for emails this should be the sent date and time of the document; and

            2.    for loose ESI this should be the last modified date of the document.

      v.     if the document is an e-mail, the Subject Line of the e-mail (unless the Subject Line itself contains privileged information) and the number of

7

       attachments to the email. If a document is not an e-mail, the File Name contained in the document's metadata, if any (unless the File Name itself contains privileged information). If no File Name is available in a document's metadata, a description of the file.

vi. the author(s) (i.e., from) with an asterisk identifying any legal personnel:

    1. for emails this should be populated with metadata extracted from the "Email From" field associated with the file; and

    2. for loose ESI, this should be populated with metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

vii. the recipient(s) (i.e., to, cc, and bcc) with an asterisk identifying any legal personnel where reasonably ascertainable:

    1. for emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

viii. an identification of any attachments to a document being withheld, accompanied by an indication of where such attachments appear on the privilege log or that such attachments have been produced and their respective bates numbers;

      ix.    the basis of the privilege claimed: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest; and/or (d) OT for Other; and

      x.    a description sufficient to allow the receiving party to assess the privilege claim.

7.2    Concurrent with their production of privilege logs, the parties shall produce a list identifying for any legal personnel listed on the privilege log, the name of the business entity to which such legal personnel were affiliated as of the time of the withheld communication.

7.3    A party shall only be required to include one entry on the privilege log to identify withheld e-mails that constitute an uninterrupted dialogue between or among individuals[1] (an "E-mail Chain"); provided, however, that the privilege log entry for any E-mail Chain shall identify:

      i.    That the e-mails are part of an E-mail Chain; and

      ii.    The senders and recipients of all e-mails that are part of the E-mail Chain..

7.4    Privilege logs shall be provided in Microsoft Excel format.

7.5    The parties agree that privileged or work product documents that were prepared, generated, and/or created subsequent to or directly related to the preparation and filing of the complaint, counter-claims, or answers, as well as communications exclusively between a party or

---

[1]    An "uninterrupted dialogue between or among individuals" means a dialogue between an identical group of individuals throughout the E-Mail Chain. If at any point in an E-Mail Chain or dialogue, one or more individuals is either removed or added, such dialogue is no longer uninterrupted for the purposes of this section.

9

its representative(s) and its trial counsel after June 26, 2017 need not be included on a privilege log.

## 8. DOCUMENTS PROTECTED FROM DISCOVERY

8.1 Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other proceeding.

8.2 In the event that a producing party believes in good faith that a document subject to attorney-client privilege, work product, or other valid privilege or immunity has been produced inadvertently, counsel for the producing party shall notify all parties in writing immediately after learning or discovering that such production has been made. The written notice shall provide the Bates number of the document in question. Upon written notice by the producing party of an inadvertent production, each recipient of such inadvertently produced information shall promptly return, sequester, or destroy the specified information and any copies it has; shall not use or disclose the information until the claim of privilege is resolved; shall take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the Court under seal for a determination of the claim under Fed. R. Civ. P. 26(b)(5)(B). The burden of establishing a privilege is on the party asserting the privilege. The burden of establishing inadvertence under Fed. R. Evid. 502(b) is on the producing party. The producing party must preserve the inadvertently produced information until the claim is resolved.

## 9. MISCELLAENOUS

The parties will meet and confer to resolve any document production disputes arising from or not addressed in this protocol. Agreement to this protocol, and any stipulations on its subject matter pursuant to Fed. R. Civ. P. 29, shall not be construed as a waiver of any rights of any party

under applicable law or the right to seek modification or supplementation of this Order by normal motion practice under the Local Rules for the Northern District of Illinois. Without limiting the foregoing, agreement to this protocol shall not be construed as a waiver of any party's right to pursue forensic copies of memory storage media or other devices. The provisions of this Order are a stipulation, made by the parties based on their ability to foresee various aspects of ESI discovery at this stage of the case. While it has been entered by the Court to provide the protections intended by such stipulation, it is not the result of an actual adjudication by the Court of any contested issue. Accordingly, the Court's consideration of any motion with respect to this Order shall be *de novo.* A party who takes any action or omits to take any action based on a good faith, reasonable belief in its propriety under this Order, or due to circumstances outside the control of an alleged violator, shall not be deemed to be in Contempt of Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: 2/4/2019

_Thomas M Durkin_
_____

Thomas M. Durkin, U.S. District Judge

## **Appendix A**

| Field Name | Description |
|---|---|
| BatesBegin | The first page of the document |
| BatesEnd | The last page of the document |
| AttachBegin | The first page/doc of the first parent of an attachment family. (e.g. ABC000001). |
| AttachEnd | The last page/doc of the last attachment. (e.g. ABC000019). |
| Custodian | Custodian name |
| All Custodians | All custodians of a globally-deduplicated document separated by semicolons (e.g. Doe, John; Roe, Robert). |
| Tag - Confidentiality | The text demonstrating the confidential level of the document (e.g. Confidential, Highly Confidential, etc.) |
| EM - Subject | E-mail subject |
| EM - To | The values in the original "To" field for emails. |
| EM - From | The values in the original "From" field for emails. |
| EM - CC | The values in the original "CC" field for emails. |
| EM - BCC | The values in the original "BCC" field for emails. |
| EM – Time Sent | Time the e-mail was sent in Eastern Standard Time |
| EM - Date Sent | Date the e-mail was sent |
| EM - Date Received | Date the e-mail was received |
| EM – Time Received | Time the e-mail was received in Eastern Standard Time |
| File - Title | Title field value extracted from the metadata of the native file |
| File - Document Type | A reference to the application that created the file, for example "Word Document" or "Excel Spreadsheet" |
| File - File Name | Original file name |
| File - File Path | The path the original native file (excluding name and file extension) |
| File - File Size | File size of the native file in bytes. |
| File - Date Created | Date the file was created (not applicable to e-mails that were sent or received) |

IF "" = "1" "**ERROR! UNKNOWN DOCUMENT PROPERTY NAME.**

| File - Date Modified | Date the file was last modified (not applicable to e-mails that were sent or received) |
|---|---|
| Extracted Text Path | File path to the extracted text/OCR file, or the extracted/OCR file link (e.g. ABC001\Text\001\ABC000001.txt) |
| Has Hidden Excel Column | Shows if there is a hidden column in an Excel file |
| Has Hidden Excel Row | Shows if there is a hidden row in an Excel file |
| Has Hidden Excel Sheet | Shows if there is a hidden sheet in an Excel file |
| Has Hidden PowerPoint Slides | Shows if there is a hidden slide in a PowerPoint presentation |
| Native File Path | File path to the native file, or the native file link<br><br>(e.g. ABC001\Native\001\ABC000001.xls) |
| MD5Hash | Unique "fingerprint" that exists for every document. This identifier is used for identification of exact duplicate documents. |

IF "" = "1" "**ERROR! UNKNOWN DOCUMENT PROPERTY NAME.**